# Supreme Court of Florida

_____

No. SC2025-1422
_____

**VICTOR TONY JONES,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC2025-1423
_____

**VICTOR TONY JONES,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

September 24, 2025

PER CURIAM.

Victor Tony Jones, a prisoner under sentence of death for whom a warrant has been signed and an execution set for September 30, 2025, appeals the circuit court's orders summarily

denying his sixth successive motion for postconviction relief, which was filed under Florida Rule of Criminal Procedure 3.851, and denying several post-warrant demands for public records under rule 3.852. He also petitions this Court for a writ of habeas corpus and moves for a stay of execution. We have jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const.

Jones's appeal and habeas petition raise two principal arguments: (1) that he probably could obtain a reduced sentence based on "newly discovered" evidence that the State has acknowledged abuse Jones suffered in the 1970s as a teenager in the Okeechobee School for Boys; and (2) that this Court should reconsider its previous decisions rejecting Jones's claim that he is constitutionally ineligible for the death penalty due to intellectual disability. For the reasons explained below, we affirm the denials of postconviction relief and of Jones's demands for public records, deny the habeas petition, and deny the motion for a stay filed on September 16, 2025, the renewed motion for a stay, filed on September 18, 2025, and the second renewed motion for a stay and to relinquish jurisdiction, filed on September 22, 2025.

# I. BACKGROUND

On December 19, 1990, on his second day of work, Jones fatally stabbed his employers, Jacob and Matilda Nestor, inside their business. Mrs. Nestor was stabbed in the back of the neck, severing her aorta. Mr. Nestor was stabbed in the chest, puncturing his heart. Before succumbing to his injury, Mr. Nestor was able to retrieve his pistol and shoot Jones in the forehead. Police found Jones locked inside the building with the Nestors' wallets, keys, and other belongings in his pockets. At the hospital, Jones admitted to a nurse that he killed the couple because they owed him money. *Jones v. State*, 652 So. 2d 346, 348 (Fla. 1995).

A jury convicted Jones of two counts of first-degree murder and two counts of armed robbery. Consistent with the jury's recommendations, the trial court imposed death sentences for both murders, based on three aggravating factors and no mitigation. *Id.* at 348-49. This Court affirmed the convictions and sentences on direct appeal, *id.* at 353, which became final when the United States Supreme Court denied certiorari review in 1995, *Jones v. Florida*, 516 U.S. 875 (1995); *see* Fla. R. Crim. P. 3.851(d)(1)(B) ("For the purposes of this rule, a judgment is final . . . on the

disposition of the petition for writ of certiorari by the United States Supreme Court, if filed.").

In the decades since, Jones has repeatedly and unsuccessfully challenged his convictions and sentences in state and federal courts. *See Jones v. State*, 855 So. 2d 611 (Fla. 2003) (affirming denial of initial motion for postconviction relief and denying his state petition for a writ of habeas corpus); *Jones v. State*, 966 So. 2d 319 (Fla. 2007) (affirming denial of first successive motion for postconviction relief); *Jones v. McNeil*, 776 F. Supp. 2d 1323 (S.D. Fla. 2011) (denying federal petition for a writ of habeas corpus); *Jones v. State*, 93 So. 3d 178 (Fla. 2012) (mem.) (affirming denial of second successive motion for postconviction relief); *Jones v. State*, 135 So. 3d 287 (Fla. 2014) (table) (voluntary dismissal of appeal of denial of third successive motion for postconviction relief); *Jones v. State*, 231 So. 3d 374 (Fla. 2017) (affirming denial of fourth successive motion for postconviction relief); *Jones v. State*, 241 So. 3d 65 (Fla. 2018) (affirming denial of fifth successive motion for postconviction relief).

Governor Ron DeSantis signed Jones's death warrant on August 29, 2025. Jones then filed his sixth successive motion for

postconviction relief under rule 3.851, raising three claims: (1) that newly discovered evidence of his eligibility for compensation under the Dozier School for Boys and Okeechobee School Victim Compensation Program provides significant mitigation; (2) that newly discovered evidence establishes that the prosecution of capital cases in Miami-Dade County results in an unconstitutional application of the death penalty in which the system disproportionately punishes defendants convicted of murdering white victims; and (3) that the unreasonably truncated and surprise nature of the warrant process in Florida has denied Jones due process. The circuit court summarily denied all three claims, as well as Jones's post-warrant public records demands. This appeal followed.

## II. ANALYSIS

### A. Sixth Successive Motion for Postconviction Relief

*1. Claim That Jones's Eligibility for Compensation Under the Okeechobee School Victim Compensation Program Constitutes Newly Discovered Evidence That He Was Abused at the School*

In 2024, the Florida Legislature passed, and the Governor signed, Committee Substitute for House Bill 21, establishing the Dozier School for Boys and Okeechobee School Victim

- 5 -

Compensation Program. *See* ch. 24-254, Laws of Fla. (creating § 16.63(1), Fla. Stat. (2024)) (providing for compensation to living persons confined to either school between 1940 and 1975 who were subjected to mental, physical, or sexual abuse by school personnel). Jones, who had four placements at the Okeechobee School between 1975 and 1978, applied for compensation under the program.[1] On January 6, 2025, the Office of the Attorney General mailed Jones a letter recognizing his eligibility for compensation under the program.

Relying on this letter, Jones argued below that "Newly Discovered Evidence That Jones Is A Member Of The Okeechobee Victim Compensation Class Establishes That Jones Experienced Trauma And Abuse At The Hands Of The State Which The State

---

1. The statute required that an applicant submit with his application "[r]easonable proof submitted as attachments establishing that the applicant was both: 1. Confined to the Dozier School for Boys or the Okeechobee School between 1940 and 1975, which proof may include school records submitted with a notarized certificate of authenticity signed by the records custodian or certified court records[, and] 2. A victim of mental, physical, or sexual abuse perpetrated by school personnel during the applicant's confinement, which proof may include a notarized statement signed by the applicant attesting to the abuse the applicant suffered." § 16.63(3)(c), Fla. Stat. (2024).

Cannot Now In Good Faith Minimize Or Assert As Not Credible And Which Establishes Significant Mitigation In His Case, Which Would Probably Yield A Less Severe Sentence On Retrial."[2]  In other words, Jones claimed that recognition of his eligibility for compensation under the program constituted newly discovered evidence establishing that he was abused at the Okeechobee School, which is significantly mitigating such that he would probably receive a life sentence at a retrial.  The circuit court summarily denied the claim as untimely, procedurally barred, and meritless.  Jones now argues that the denial was erroneous.

We review a decision to summarily deny a successive rule 3.851 motion de novo, and we accept a movant's factual allegations as true to the extent they are not refuted by the record.  *Zakrzewski v. State*, 415 So. 3d 203, 208 (Fla.), *cert. denied*, No. 25-5194, 2025

---

2.  Jones has attempted to reframe this claim on appeal.  He now states that "Newly Discovered Evidence Of The State Of Florida's Recognition Of Jones's Abuse At The Okeechobee And His Entitlement To Compensation As A Victim Of A Crime Is Material Evidence Which Renders His Death Sentence Unreliable And Would Likely Lead To A Life Sentence On Retrial."  Initial Brief of Appellant at 35.  This reframing has no bearing on our analysis of the denial of the claim he raised below.

WL 2155601 (U.S. July 30, 2025). "As we have recently reiterated, we will affirm the denial of successive claims that are procedurally barred, untimely, legally insufficient, or refuted by the record." *Bates v. State*, No. SC2025-1127, 2025 WL 2319001, at *3 (Fla. Aug. 12), *cert. denied*, No. 25-5370, 2025 WL 2396797 (U.S. Aug. 19, 2025).

The circuit court correctly determined that Jones's claim is procedurally barred. The alleged abuse occurred nearly fifty years ago—and roughly fifteen years before his trial—yet Jones did not raise it at trial or in any prior postconviction proceeding. Because Jones's claim about any abuse he suffered at the Okeechobee School could have and should have been raised earlier, it is procedurally barred. *See Rogers v. State*, 409 So. 3d 1257, 1263 (Fla.) ("[I]n an active warrant case, a postconviction claim that could have been raised in a prior proceeding is procedurally barred."), *cert. denied*, 145 S. Ct. 2695 (2025).

Attempting to avoid this procedural bar, Jones now claims that his "argument was not that the evidence of abuse was new, but that the State's long-standing cover up of the conditions at . . . Dozier and Okeechobee, and the State's January 6, 2025[,]

- 8 -

admission that Jones suffered severe abuse[3] warranting financial compensation, was new evidence . . . ." Initial Brief of Appellant at 18. But this differs from the argument raised below, which was that "the extent of the abuse Jones suffered at Okeechobee, and the State of Florida's cover up of that abuse and continuing denial or diminution of the abuse through 2020 and beyond, is evidence of such a nature as to probably yield a life sentence on retrial." Regardless, any mitigation that Jones might offer at a retrial regarding the Okeechobee School would derive from the abuse itself—known to him since the 1970s—not from the 2025 eligibility letter. The letter merely recognizes Jones's eligibility under the statutory criteria; it does not admit any specific abuse of Jones.

The circuit court also properly rejected the claim as meritless. Even assuming that Jones's eligibility for compensation under the program constitutes newly discovered evidence, Jones cannot establish that his eligibility for compensation or even a credible claim of abuse at the Okeechobee School is of such a nature that it

---

3. The record refutes Jones's claim that the State admitted in the January 6, 2025, letter "that Jones suffered severe abuse." The letter does not acknowledge any specific abuse of Jones.

would probably yield a life sentence on retrial. *See Dillbeck v. State*, 357 So. 3d 94, 100 (Fla. 2023) (stating that to obtain relief based on a claim of newly discovered evidence, a defendant must establish "(1) that the newly discovered evidence was unknown by the trial court, by the party, or by counsel at the time of trial and it could not have been discovered through due diligence, and (2) that the evidence is of such a nature that it would probably . . . yield a less severe sentence on retrial." (omission in original) (quoting *Dailey v. State*, 329 So. 3d 1280, 1285 (Fla. 2021))).

Jones brutally murdered two people for pecuniary gain. The trial court found three strong aggravating factors were proven beyond a reasonable doubt: (1) Jones was under a sentence of imprisonment; (2) Jones was convicted of a prior violent felony; and (3) the murders were committed during the course of robbery.[4] *See Cruz v. State*, 320 So. 3d 695, 726 (Fla. 2021) ("The prior violent felony is one of 'the weightiest aggravators in Florida's statutory scheme.'" (quoting *Gonzalez v. State*, 136 So. 3d 1125, 1167 (Fla.

_____

4. The trial court also found that the murder was committed for pecuniary gain, which it merged with the "during the commission of a robbery" aggravating factor.

- 10 -

2014))); *Marshall v. State*, 604 So. 2d 799, 802, 806 (Fla. 1992) (identifying under sentence of imprisonment, prior violent felony, and during the commission of a felony as strong aggravating factors). And Jones failed to establish the existence of any mitigating circumstances to weigh against these strong aggravating factors. Even if Jones presented credible evidence of his abuse at the Okeechobee School, it cannot be said that he would probably receive a life sentence on retrial. The circuit court therefore did not err in summarily denying this claim.

### 2. Claim That the Nature of the Death Warrant Proceedings Violates Due Process Guarantees

Jones next argues that the circuit court erred in summarily denying his claim that the unreasonably truncated and surprise nature of the death warrant process in Florida violates "the Due Process Clause of the Fifth, Fourteenth, and Eighth Amendments."[5]

---

5. While the Eighth Amendment's "prohibition on cruel and unusual punishments . . . is a particular aspect of due process," *Yacob v. State,* 136 So. 3d 539, 562 (Fla. 2014) (Canady, J., concurring in part and dissenting in part), because it is "made applicable to the States by the Due Process Clause of the Fourteenth Amendment," *id.* (quoting *Graham v. Florida,* 560 U.S. 48, 53 (2010)), it does not contain its own due process clause, and

This Court has repeatedly rejected similar claims. *E.g.*, *Windom v. State*, No. SC2025-1179, 2025 WL 2414205, at *6 (Fla. Aug. 21), *cert. denied*, No. 25-5440, 2025 WL 2460118 (U.S. Aug. 27, 2025); *Bates*, No. 2025 WL 2319001, at *5; *Zakrzewski*, 415 So. 3d at 211; *Bell v. State*, 415 So. 3d 85, 106-07 (Fla.), *cert. denied*, 145 S. Ct. 2872 (2025); *Hutchinson v. State*, No. SC2025-0517, 2025 WL 1198037, at *4 (Fla. Apr. 25), *cert. denied*, 145 S. Ct. 1980 (2025); *Tanzi v. State*, 407 So. 3d 385, 390-91 (Fla.), *cert. denied*, 145 S. Ct. 1914 (2025); *Barwick v. State*, 361 So. 3d 785, 789 (Fla. 2023). "A thirty-day warrant period does not, in and of itself, deprive a capital defendant of [due process]. In post-warrant litigation, due process requires a defendant be given notice and an opportunity to be heard." *Bates*, 2025 WL 2319001, at *5. Jones has not identified any matter on which he was denied notice and an opportunity to be heard.

The record refutes Jones's claim that the issuance of his warrant was a "surprise." Jones's death sentences were imposed

---

the thirty-day warrant period does not otherwise violate the Eighth Amendment.

thirty-two years ago and have been final for thirty years. As required by section 922.052(2)(a), Florida Statutes (2013), the Clerk of this Court certified to the Governor on October 4, 2013, that Jones had completed his direct appeal and initial postconviction proceedings in state court and his habeas corpus proceedings and appeal therefrom in federal court. Thus, in addition to the thirty-two years of notice since the imposition of his death sentences, Jones has been on notice for nearly twelve years that he is "warrant-eligible," meaning "the [G]overnor could sign a warrant for his execution," *Silvia v. State*, 228 So. 3d 1144, 1146 (Fla. 2013). This claim lacks merit, and its summary denial was proper.

## B. Public Records Claims

Jones also challenges the circuit court's denial of several post-warrant demands for public records, which, he claims, violated his rights to due process and equal protection under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution. Relevant to this appeal are his demands made under Florida Rule of Criminal

Procedure 3.852(i)[6] for records of reports, memos, notes, or communications relating to the investigation of the Okeechobee School or prosecution of any cases originating from acts that occurred at the Okeechobee School. Jones made the demands to the Okeechobee County Sheriff's Office (OCSO), the Office of the Attorney General (OAG), the Office of the State Attorney for the Nineteenth Judicial Circuit (SAO19), and the Department of Children and Families (DCF).[7] The demands to OCSO were denied

_____

6. Rule 3.852(i)(1) provides that collateral counsel may obtain public records "in addition to those provided under subdivisions (e), (f), (g), and (h) of this rule" if counsel files an affidavit in the trial court which:

> (A) attests that collateral counsel has made a timely and diligent search of the records repository; and
>
> (B) identifies with specificity those public records not at the records repository; and
>
> (C) establishes that the additional public records are either relevant to the subject matter of the postconviction proceeding or are reasonably calculated to lead to the discovery of admissible evidence; and
>
> (D) shall be served in accord with subdivision (c)(1) of this rule.

7. Although Jones mentions other agencies and rule 3.852(h)(3) in his initial brief, he specifically states: "Jones focuses his appeal on the lower court's wrongful denial of his demands pursuant to Rule 3.852(i) concerning records relating to the Okeechobee School for Boys, made to four agencies: [OCSO, OAG,

- 14 -

as improper under rule 3.852(h), untimely, lacking a showing of good cause as to why they were not requested before the warrant was signed, and not related to a colorable claim for postconviction relief under rule 3.852(i). The demands to OAG were denied as untimely, lacking a showing of good cause as to why they were not requested before the warrant was signed, and not related to a colorable claim for postconviction relief; those relating to victims and compensation were determined to be exempt from disclosure. The demands to SAO19 and DCF were denied as moot based on responses from the agencies that they did not possess any of the records demanded. We review the denial of demands for public records for abuse of discretion, *Muhammad v. State*, 132 So. 3d 176, 200 (Fla. 2013), and find none.

Jones's first subargument, titled "The Lower Court Erred In Determining Rule 3.852([i]) Was The Improper Vehicle," appears to relate to his demands for records from OCSO titled "Defendant's Demand for Additional Public Records Pursuant to Florida Rule of

SAO19, and DCF]." Initial Brief of Appellant at 51-52 (footnote omitted). We reject any argument that the denial of access to Florida Department of Law Enforcement (FDLE) records constituted a violation of due process.

Criminal Procedure 3.852(i)" and "Defendant's Renewed Demand for Additional Public Records Pursuant to Florida Rule of Criminal Procedure 3.852(i)."

The circuit court denied the initial demand to OCSO, in part, because while rule "3.852(h)(3)[8] clearly contemplates that requests of this nature are for 'updated' records from a person or agency to which a previous public records request was made," "no such request was ever previously made to [OCSO]. Consequently, this is not an 'update' or 'additional' records request as allowed by the Rule, but a completely new request, not permitted by the Rule." The circuit court also found that Jones's argument that he was entitled to these records under rule 3.852(i) was without merit and untimely, that Jones had failed to show good cause as to why the records request was not made until after the death warrant was

---

8. Rule 3.852(h)(3) provides that within ten days after the signing of a death warrant, a records request may be made to "a person or agency from which collateral counsel has previously requested public records." The rule provides that upon such request, "[a] person or agency shall copy, index, and deliver to the [records] repository any public record: (A) that was not previously the subject of an objection; (B) that was received or produced since the previous request; or (C) that was, for any reason, not produced previously."

signed, that the request was not related to any colorable postconviction claim, and that the requests were overly broad and unduly burdensome.

The circuit court also denied the renewed demand, finding "[t]he title of the Renewed Demand as well as the initial Demand are confusing in that it leads one to believe that the Defendant has requested documents from this agency in the past," and rule "3.852(h)(3) clearly contemplates that requests of this nature are for 'updated' records from a person or agency to which a previous public records request was made." The court again found that under rule 3.852(i), the demands to OCSO were untimely, that Jones had failed to show good cause as to why the records request was not made until after the death warrant was signed, that the request was not related to any colorable postconviction claim, and that the requests were overly broad and unduly burdensome.

Putting aside the circuit court's possible (and justified) confusion over the rule provisions under which Jones demanded public records, the court ultimately made rulings denying the demands under both subdivisions (h) and (i). We find no abuse of discretion in the circuit court's conclusions that Jones failed to

show why he did not request the records from OCSO until after the death warrant was signed, that the records requests did not relate to a colorable claim for postconviction relief, and that the requests were overly broad and unduly burdensome.[9]

"Rule 3.852 is 'not intended to be a procedure authorizing a fishing expedition for records.'" *Dailey v. State*, 283 So. 3d 782, 792 (Fla. 2019) (quoting *Bowles v. State*, 276 So. 3d 791, 795 (Fla. 2019)). "For this reason . . . records requests under Rule 3.852(i) must 'show how the requested records relate to a colorable claim for postconviction relief and good cause as to why the public records

---

9. Jones's argument here with respect to OCSO is as confusing as his demands to OCSO below seeking "additional" records under rule 3.852(i). Although the title of this subargument is, "The Lower Court Erred In Determining Rule 3.852([i]) Was The Improper Vehicle," Initial Brief of Appellant at 62, Jones provides no citation to such a determination in the record, and he concludes this subargument by stating that "the lower court's rulings that the requests were improper because they did not meet Rule [3.852](h)(3) are [sic] must be reversed," Initial Brief of Appellant at 64. Based on Jones's assertion that he "focuses his appeal on the lower court's wrongful denial of his demands pursuant to Rule 3.852(i)", Initial Brief of Appellant at 51, we will presume that he is arguing only that his demands to OCSO were improperly denied under rule 3.852(i). If Jones were arguing that the demands to OCSO were improperly denied under rule 3.852(h), we would find no abuse of discretion because no demands were made to OCSO before the warrant was signed.

request was not made until after the death warrant was signed.' " *Id.* (quoting *Bowles*, 276 So. 3d at 795). "[W]here a defendant cannot demonstrate that he or she is entitled to relief on a claim or that records are relevant or may reasonably lead to the discovery of admissible evidence, the trial court may properly deny a records request." *Asay v. State*, 224 So. 3d 695, 700 (Fla. 2017).

Jones asserted that his demand was "filed within a reasonable time after the fund was established and Mr. Jones was recognized as a member of the class of individuals entitled to compensation by the State of Florida for the abuse he suffered by the State of Florida while confined at the Okeechobee School." In finding the demands untimely, the circuit court noted that the bill creating the compensation fund was signed into law in 2024, and Jones was notified that he has been recognized as a member of the class in a letter dated January 6, 2025, yet Jones provided no justification for the delay in seeking the records until September 2025, after the warrant was signed. The circuit court did not abuse its discretion in concluding that Jones failed to establish good cause for failing to request these records prior to the signing of his death warrant.

Nor did the circuit court abuse its discretion in concluding that the records did not relate to a colorable claim for postconviction relief. As we have already explained, any abuse that occurred at the Okeechobee School in the 1970s does not provide Jones with a basis for a colorable claim of relief. We also find no error in the circuit court's determination that Jones's demands were overly broad and unduly burdensome. For the same reasons, we find no abuse of discretion in the denial of the demands made to OAG. And we find no abuse of discretion of the denial of the demands made to SAO19 and DCF based on their assertions that they are not in possession of any of the records demanded.

Jones also argues that the circuit court erred in failing to conduct in camera inspections of records the agencies claimed were irrelevant or statutorily exempt from disclosure and that the circuit court erred in denying demands based on agency objections without conducting an evidentiary hearing. Jones speculates that in camera inspection might have uncovered *Brady*[10] material. But Jones has not identified any reason to believe that *Brady* material

10. *Brady v. Maryland*, 373 U.S. 83 (1963).

- 20 -

has been withheld, nor has he identified any authority requiring an in camera inspection or evidentiary hearing under these circumstances. We cannot find that the circuit court abused its discretion here.

Jones has failed to establish that the circuit court abused its discretion in denying any of his post-warrant public records demands. He has also failed to establish that the denial of records violated his rights to due process and equal protection. He is not entitled to relief on this claim.

## C. Habeas Petition

Jones's habeas petition urges this Court to reconsider its 2017 decision affirming the denial of Jones's fourth successive motion for postconviction relief, in which he sought a new determination of his claim that he is ineligible for the death penalty due to intellectual disability in light of the decision of the United States Supreme Court in *Hall v. Florida*, 572 U.S. 701 (2014). *See Jones*, 231 So. 3d 374. But habeas corpus is not a vehicle to relitigate issues already decided. *See Gaskin v. State*, 361 So. 3d 300, 309 (Fla. 2023) ("Habeas corpus is not to be used to litigate or relitigate issues which could have been, should have been, or were previously

- 21 -

raised."); *Knight v. State*, 923 So. 2d 387, 395 (Fla. 2005) ("[C]laims [that] were raised in [a] postconviction motion . . . cannot be relitigated in a habeas petition."). Because Jones's habeas petition seeks only to relitigate an issue that was previously decided, we deny the petition.

## III. CONCLUSION

For the reasons stated above, we affirm the circuit court's orders summarily denying Jones's sixth successive motion for postconviction relief and denying his post-warrant demands for public records. We deny Jones's petition for a writ of habeas corpus and deny his motion for a stay of execution, his renewed motion for a stay of execution, and his second renewed motion for a stay and to relinquish jurisdiction.

No motion for rehearing will be entertained by this Court. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and COURIEL, GROSSHANS, FRANCIS, and
SASSO, JJ., concur.
LABARGA, J., dissents.
CANADY, J., recused.

An Appeal from the Circuit Court in and for Miami-Dade County, Lody Jean, Judge – Case No. 131990CF0501430001XX And an Original Proceeding – Habeas Corpus

Suzanne Keffer, Capital Collateral Regional Counsel, Marie-Louise Samuels Parmer, Special Assistant Capital Collateral Regional Counsel, Brittney N. Lacy, Assistant Capital Collateral Regional Counsel, and Jeanine L. Cohen, Staff Attorney, Capital Collateral Regional Counsel, Southern Region, Fort Lauderdale, Florida,

 for Appellant/Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, Leslie T. Campbell, Senior Assistant Attorney General, West Palm Beach, Florida, Lisa-Marie Lerner, Senior Assistant Attorney General, West Palm Beach, Florida, and Jennifer A. Davis, Senior Assistant Attorney General, Miami, Florida,

 for Appellee/Respondent

Melanie C. Kalmanson of Quarles & Brady LLP, Tampa, Florida,

 for Amici Curiae Troy Rafferty of Rafferty Domnick Cunningham & Yaffa, Advancing Real Change, Inc., Conservatives Concerned, Florida Association of Criminal Defense Lawyers, Florida Justice Institute, Florida Public Defenders Association, and Witness to Innocence